Good morning, Your Honors, and may it please the Court, my name is Samuel Moak and I'm the attorney for the petitioner Zhu Wang. I would like to reserve three minutes for rebuttal. The case of Minto v. Sessions does not apply to this petition. The material facts of Minto are different than the facts of this petition, so much so that the Court's holding in Minto regarding the interplay between 8 U.S.C. 1182-A7 and 48 U.S.C. 1806-E is rendered dicta as a result. The facts of Minto are different than the facts of this case. In Minto, the alien did not have the protection of 8 U.S.C. 1182-A6, which, I'm sorry, 48 U.S.C. 1806-E1. So, to clarify, he didn't have the protection of the umbrella permit that was granted between, in the two-year transition period? Well, to clarify, Your Honor, actually, in Minto, the alien did not have an umbrella permit. Right, I'm talking about your case. Yes, Your Honor. In my case, unlike the alien in Minto, who had his status revoked in 2008, which was before the federal takeover of immigration. In my case, the alien, the petitioner, had a conditional umbrella permit that gave him status on the day of the takeover. We have a large number of these cases on this calendar, as you know, and we've been trying to understand how these pieces fit together. Everybody seems to think that the umbrella permit is somehow a document that would maybe conform to 1182-A7 if 1182-A7 applies. Can you explain why that is? It's a document. First of all, it was issued by CNMI, not by the United States, right? Yes, Your Honor. But is it generally the position of the government or maybe the practice of the government to regard those as triggering 1806-E? Is that the understanding, even though it doesn't – it's never really been explained anywhere? Yes, Your Honor. In fact, it's not just the understanding. It's written into law under 48 U.S.C. 1806. It carves out an exception to the ground of removal listed under 8 U.S.C. 1182-A6, which states that – I'm aware of that, but that's not what I'm talking about. Yes, Your Honor. So there's an exception carved out specifically for aliens who were granted status by the CNMI government prior to the takeover. Yes, who were legally present under the CNMI government. But the government's position is then, as I understand it, under Minto, that that's sort of irrelevant because they can separately remove people under 1182-A7, and we can talk about Minto if you want. Yes, Your Honor. For not having the requisite document. Nonetheless, is the practice that the government has not been removing people who do have these umbrella permits? That's what the law says, yes, Your Honor. No, it isn't what the law says. It says that if you were given status by the CNMI government, then that would protect you under 86. I know, but their theory is that that only applies to 1182-A6 and not to 1182-A7. That's their theory. Well, are you saying – Let me address that. No, wait a second. My question is sort of related. So I see in this case you have – your client has an entry permit, a valid entry permit. Are you saying that the valid entry permit, it falls within the meaning of A7, where it says who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter? Are you saying that the control permit falls – is a valid entry document required by this chapter? No, Your Honor. You're not saying that? I'm not saying that. I would argue that. That's why I'd argue Minto didn't apply. I'm not arguing that. Because – well, okay, go on. What I am arguing, Your Honor, if I may, is that Minto does not preclude me from making the argument that the congressional intent would be violated in codifying 48 U.S.C. 1806E. It was meant to minimize the economic turmoil and hardship caused to the island by all of a sudden having all these aliens on Saipan deportable. And so it gave a transition period where if they were granted status by the Sinai government, they could then stay and use that time period to transition to a federal status. I completely understand that, counsel. But what Minto did is say, oh, all that notwithstanding, if you don't have this valid entry document, then you're not admissible into the United States, and you have to have it as of November 2011. So I'd like to address that. So what the panel in Minto actually said, if one looks at it closely, is that actually it just says that A7 says that if you don't have an unexpired visa or permit, you're removable. And that could apply to anybody even in the mainland United States. What Minto did not confront is what we have here and what I'm going to ask the panel to consider, which is this alien had special protection given to him by 48 U.S.C. 1806. That wasn't Minto. So whatever the court said about the application of A7 doesn't necessarily apply to this case. And I'm asking the court to ---- Is it clear? Let's go back to your point. I understand what you're saying about Minto. I understand why you're saying it, although I think Minto does say otherwise. But I understand you're saying it's dicta because in that case there was no such person, and you may be right about that. But here, as I understand it, the BIA didn't think you actually had this permit, or your client actually had this permit at the requisite time. I would disagree, Your Honor. In fact, the BIA made no reference to this issue in its decision. It relied instead on the erroneous statement that prior counsel had conceded removal, which he did not do, and had waived it by failing to articulate it fully in his notice of appeal. Okay, show me why it's not true that he conceded removability. Because you're right, the BIA says that. That's right. So as I said in my brief, Your Honor, the prior counsel, it was a misunderstanding. The prior counsel was asked by the immigration judge on the day of removal whether the alien had status on that day. And he said no, he didn't have status on that day, which was sometime in 2012. But that doesn't mean he conceded that the fact that he was put, the alien in this case, was put in removal when his umbrella permit was still valid. He didn't concede that. And he didn't concede that at the time of the federal takeover that he didn't have status. He just said at the time of the day of the hearing he admitted the alien didn't have status. I wouldn't call that a concession, Your Honor. In fact — Well, two things about that. It's at least a concession about the time that he was actually removed. So why doesn't that govern? In other words, suppose we said that, well, they shouldn't have put him in proceedings when they did. But as it turned out, by the time they removed him, he actually didn't have status. So then we would say they shouldn't remove him, but they'll just start all over again and remove him. No. Well, I would say, Your Honor, if Congress passed a law that protected aliens such as my client and he wasn't given that protection and prematurely removed, it's not okay to say after the fact, well, now it's moot. It's not moot because if he was given the full amount of time that he was entitled to under law, he could have done exactly what the intent of the law was, transition. He could have gotten a visa. He could have gotten a visa. He has a special needs sign, Your Honor. Seven-year-old Franklin is a U.S. citizen. He has a genital defect. He cannot urinate through his urethra, and he must do it through his scrotum. So much so that he was given special permission by the USCIS to go get medical treatment. And I feel that if he had been given the opportunity, the full extent of the two-year period promised to him by law, he could have gone ahead and applied for special parole as a caregiver of a disabled person. Counsel, if this issue was not decided by the board, how do we have jurisdiction to decide it? Well, I'm arguing, Your Honor, that this BIA decision was wrongfully decided. It was premised on the erroneous supposition that the counsel prior had conceded, had waived, and it didn't even address any of these issues relating to the interplay between 48 USC, which gives explicit protection to my client and allows him to stay. But that's my point. If the board didn't address it, how can we have jurisdiction to address it? Well, it was addressed, Your Honor, to the immigration judge by prior counsel. There was colloquy in the transcripts of the underlying hearings where the argument was made about the umbrella permit, Your Honor. And while I appreciate government now is saying that this is a conditional permit, no such argument, there was no finding made that this wasn't a valid permit. They didn't appeal the ruling. The immigration judge declined to rule on whether the conditional permit was valid and instead ruled an A7. So all I'm doing today, Your Honor, is making the point that this panel is not confined by Minto, that this panel can decide that by finding him removable under A7, when he's protected by A6, is doing an end run around the intent of the law, which is to give transition period to aliens exactly like my client. And so the logic, here's the logic. Basically, the logic would be, which doesn't make sense, is that Congress protects people like my client under 48 USC, but then it's also saying because he doesn't have a visa, he's removable. But Minto did specifically address that. Now, I think you're right that the person in that case did not have legal status. But nonetheless, in the course of explaining why A7 applied, they did go through at great length this question about 1806. And, you know, they said it doesn't matter. Now, you know, whether we ought to suggest that Minto was wrongly decided is another question. I wouldn't say that. Why not? Why don't you say it? Because they weren't confronted like this panel is, where the alien issue is protected under A6. That alien wasn't. I think you don't need to say it because your client, Wong, am I pronouncing that right? Yes, Your Honor. Okay. Wong is in a different category because he was put into removal proceedings while he was still protected by the permit. Yes, Your Honor. That's correct. What other implications does that permit have? I mean, was it a work status permit? It was a legal permit. And so he was allowed to stay until right to the beginning, until November 27, 2011. And he was put in removal in February of 2011. Right. So what happens to those people who have a lawful permit until November 28, 2011? What happens then at that moment? Then what they can do is apply to the USCIS for parole or a CW1, which is a nonimmigrant visa, especially for the CNMI, or some other visa they may qualify for. But that was the point. They can't do that if they don't have an umbrella permit. So it's a prerequisite to getting other status. And if you remove him prematurely, as ICE did in this case, you've deprived the alien of the protection explicitly given under 48 USC. Counsel, are you saying that the removal prevented him from satisfying the conditions that were attached to the permit? No, I'm not saying that. In fact, I would like to, in my rebuttal, address that. So the argument being made – Counsel, you're three minutes over time right now. Yes, Your Honor. But you can answer Judge Rawlinson's question, of course. Yes. So I'm not arguing that. There's no – what happened, and it's in the record under the transcripts, the prior counsel told the immigration court that what the practice was in the CNMI was that a few days before the takeover, which was November 25, 2009, the Attorney General of the CNMI gave conditional umbrella permits to people who would otherwise overstate. And they had attached conditions. But this power subsequently was lost when the federal government took over. And furthermore, the CNMI government abandoned enforcing these conditions. They did not follow up on anybody. And this was unchallenged by the government at the time of the initial hearing. The immigration judge made no such finding. And so basically, this – what we call a conditional umbrella permit is actually an umbrella permit. All right. Which is how I termed it. Thank you, Your Honor. All right. Thank you, counsel. May it please the Court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. Good morning, sir. Going in question. In all of these cases, it seems to me we have a whole chunk of them. They were briefed by different people for the government. They seem to have different views as to the impact of this umbrella permit, leaving aside whether it was or wasn't one here, on the application of 1182A7. Is it your position that if he had an umbrella permit, that 1182A7 wouldn't apply? And if so, why? And what are the consequences of that? Excuse me. No, Your Honor. 1182A7 would apply even if there was an umbrella permit. So you think the umbrella permits don't mean anything? The umbrella permits do mean something. What do they mean? They mean that the individual had status, if it is a lawful umbrella permit, they had status from November 28th of 2009 through that 2011 date in order to apply for something from the United States government. Right. So they do mean something. They mean that they're not removable under 1182A7. No. They mean for those two years. No. They're not removable under 1182A6, which is being lawful without admission. Well, that's fine. But then if they can be removed under 1182A7, then the permits don't mean anything. The permits were intended to bridge the gap between the time that the CNRA took effect in the Mariana Islands and the time the U.S. Right, exactly. But if you can nonetheless remove them, I mean, this is the – I don't think the mental panel understood this. If you can then remove them in the meanwhile, before they have a chance to apply for a CW-1 or parole or anything else, then the impact of 1806 is completely eliminated. Well, Your Honor, this individual did have the opportunity to apply. I don't want to – We want to try to focus. We've got seven of these cases over two days, right? Mm-hmm. So I don't think you have to be mentored that broadly to say that if you have a valid permit in the two-year transition period that protects you from removal, that during that period you can still remove them under A7. I think that would contravene Congress's intent for that two-year period. Why else would Congress have done this two-year period for transitioning while the United States immigration laws came fully into effect? And I don't think the facts of Minto support that. Okay. Well, Your Honor, it's – And I also want to ask this. Have you conferred with all the various people from the government who are going to be – are you going to argue all these cases? No. My colleague, Rachel Browning, is arguing two today. I'm arguing one tomorrow. So there's two of us. And have you conferred and you have a single government position? I believe so. I think that all of our briefs are aligned with Minto's reasoning, which is that the 1182A7, we go through the prongs that you have to be an intending immigrant, you have to be an applicant for admission, and you have to be lacking a valid entry document into the United States. But you don't – at some points in the briefs, it appears that you are regarding these umbrella permits perhaps as a valid entry document, or for some reason you regard them – that it matters whether you have an entry permit. An umbrella permit. At another point, it appears that your position is it doesn't matter for purposes of A7 whether you have an entry permit. So I would just like a firm position on that. Okay. The government argues that it doesn't matter. Okay. So why are you spending all this time worrying about it in your briefs, about whether they have one or don't have one? Well, because in all of the cases, I believe the petitioner raises that and argues that to, you know, ad nauseum about they have it, they have the status, they have the permit, ad nauseum. So your position is that even if they have proof of – if they have these, that the umbrella permits just don't matter? It's not that it doesn't matter. The plain language of the statute, what Congress wanted to do is written in the statute, and it says that they could not be removed if they were lawfully present under CNMI law, under 1182A6. I know, but you're reading 1182A6 essentially out of the statute, because anybody – just as far as I can tell, anybody who would be removed under 1182A6 could be removed under your version of A7. Is there any such person who would – is there such a person who could be removed under A6 but not under A7? Is there such a person? In general, not only just in CNMI, anywhere. If they're present without admission, could they not be removed? Right. Is there any person who's present without admission and has the right documents? Of course not. Right. But they could have applied for the documents and have a pending application before USCIS. So what? But they still don't have the documents, and therefore anybody who is removable under A6 is removable under A7. That's your fundamental position, which Minto agreed with. Yes. And even the footnote in Minto, footnote 7, actually states that the panel didn't need to get to the question of whether or not this person had a permit, an umbrella permit, because it wouldn't have mattered, because that permit is not a permit issued by the U.S. government. The INA contemplates that an individual will seek a visa or entry permit under the Immigration and Nationality Act. So it's also true, then, that A06 is completely irrelevant in general over the whole United States because anybody who could be removed under it could be removed under A07. And secondly, that 1806 is completely irrelevant because anybody who would be protected by it could still be removed under A07. I mean, that's the government's basic position. Well, basically, yes, and because the statute, first of all, if you look at 48 U.S.C. 1806, A4, it says nothing prohibits the removal of an alien under the INA. So you think Congress just went through all these steps of – and we also know that Congress meant this transition period to give people time to apply for the CW1 visas and parole and so on. And Minto says, well, you know, never mind about this because there's these other possibilities, but you can't apply for them if you're illegally here and you're being removed. So, therefore, those are also being negated if you – well, so that's your position. Yes. All right. But on the other hand, it's not what's being done on the ground, as I understand it. Right. The cases that you're seeing are the cases of individuals who are out of status and who didn't fulfill the conditions of their umbrella permits. You're not seeing the people – Well, what difference does it make if the umbrella – this is what I'm saying, but that is not – it doesn't seem to be what was happening on the ground because, on your theory, it doesn't matter if they're fulfilling the conditions of their umbrella permit because it doesn't matter if they have an umbrella permit. Well, so the individual was placed in removal proceedings because he hadn't complied with the conditions of his umbrella permit. So the government gave them the opportunity to obtain the permit and then seek a visa or entry document from the U.S. So, in other words, you're saying that even though they didn't have to, the government, as a matter of practice, did this, although it didn't have to do it. Is that what you're saying? Absolutely. The government – the CNMI government is the one who is issuing the umbrella permits. Right. They were doing that to give these individuals a lawful status to bridge the gap from being out of status to being able to apply for a U.S. visa. Right. So, in other words, he overstayed. His client overstayed. Yes, but in your theory of the statute, all of this doesn't make a difference because even if they had the umbrella permit and even if they applied for the CW-1, in the meanwhile, they could still be removed under A-7. They would have the pending visa. They would have an application pending for a visa, and therefore would have – And therefore? I'm sorry? And therefore what? And therefore, DHS wouldn't have placed them in removal proceedings to begin with. Just as a matter of practice, not because they couldn't have. Exactly. This individual was out of status as of – according to the record, 2007, he was an overstayer from O-7 until O-9. And Mariana's government gave him the opportunity to get this umbrella permit so that when he applied to the United States government for a visa, he would not be looked at as somebody unlawfully present, but somebody with this umbrella permit. According to you, he was unlawfully present because the umbrella permit didn't matter. That's what I'm not understanding. If he was lawfully present with the umbrella permit, then he wasn't – if he was lawfully present with the permit, he wasn't unlawfully present under 1182. Yes, he was, according to you, because under A-7 he was still unlawfully present. He doesn't have a valid permit under 1182-A-7. It's a different ground of removability from 1182-A-6. But he's still removable. What's the difference if it's a different ground of removability? Well, the difference is that Congress carved out an exception only for 1182-A-6 and only for those who are lawfully present and only for those for two years. So all of this discussion about this exception ended in November 27th of 2011 when the exception was no longer valid. Counsel, in your view, would Minto have to be overruled in order for the petitioner to prevail? Yes, because even though some of the facts are different, he's still – for example, intending immigrants who at the time for application for admission to the United States did not have a valid entry document. This individual conceded that he was present without admission. That was the allegation number four of his notice to appear. His attorney conceded that he was present without admission. Therefore, he's an intending immigrant seeking to be admitted to the U.S. and he needed some sort of valid document. And I don't want to escape the attention of the Court that this individual could have applied for a transitional worker visa before he was placed in removal proceedings. He could have fulfilled the conditions of his umbrella permit. There is no evidence he went to his appointment on February 9th of 2010. He was placed in removal proceedings almost a year later. He never gave any evidence that he tried to apply for humanitarian parole, even though the government was taking those applications two and four months before his removal order. So they started taking that – I see my time is up. May I finish? Please. Thank you. They began accepting humanitarian parole applications under the two programs in October and in December. And several times the immigration judge gave a continuance in order for his attorney to explore these options. And actually the attorney said, we're looking into it, we're going to apply, and he never did.  He had the opportunity to apply for visas, anything he was eligible for. Could he apply while he was in removal proceedings? Yes. And it would have been considered? I'm not sure. I can't speak to what DHS would have done. One of the parole – I thought it was not a condition that you're not being in removal proceedings, no? Right. I mean, this is a special kind of humanitarian parole that was created for these individuals. And? And one of the parole applications – it's in the record, I believe at like AR-135, I believe. One of the parole applications would not allow for somebody who was unlawfully present in the United States. So if his umbrella permit wasn't legitimate, then he would – I don't understand. You keep coming back to the umbrella permit, and then you tell me the umbrella permit is meaningless. It's not – The umbrella permit is not meaningless because it's intended – think of it as there's 10,000 or 20,000 non-citizens in the Mariana Islands who needed to transition from a Mariana's visa to a U.S. visa. Those people, some of them were given umbrella permits to bridge the gap, and many, many, many of those people were not in removal proceedings. So for those people, it was not meaningless. That permit allows – Well, it was meaningless in the sense that the government could show up the next day and say, now you are in removal proceedings. All the individuals that were – Just a second. Answer Judge Berzon's question. It was meaningless because the government could show up under A-7 because they don't have the valid entry document. If they had a pending application, I mean, I guess I honestly don't know because that's not – So you can't really answer the question. Under – the practice was that if there's a pending application, they wouldn't be put in removal proceedings. So that's the practice. But your position is not what you just said. Your position is legally that it was meaningless because they could have been deported anyway with the permit. The permit would only allow them to avoid removal under 1182-A-6. Right. So it wouldn't allow them to avoid removal. If they were placed in removal proceedings, yes. So it just gave complete discretion to the government. Yes. Serendipity. Congress's plenary power. That's what Congress intended was serendipity. No, they intended what the statute said, which is that the only exception that all grounds of removability would apply except for 1182-A-6 and only for those lawfully present on November 28, 2009, and only for two years. And after that two-year period, you had to have already adjusted your – not adjusted, I shouldn't use the word just. You had to have already obtained a visa or entry document through the United States Immigration Authorities. Well, I understand that as being rational. But I don't understand trying to assign some meaning to the permit for the two-year transit, which Congress intended for purposes – I mean, there's lots of stuff about this, but also not to protect the petitioners but to keep the workforce steady and keep the country thriving. I mean, it was not just solely for the benefit of the petitioners. It was for the benefit of CNMI as it was transitioning. Right. And on the date of the – well, in 2008, before this went into law, there were over 22,000 individuals in lawful status that would have transitioned to a worker visa. This individual – they would have if the INS didn't get there first and try and remove them under A7. Right? Under your theory. Well, they had applied – at that time they had applied for a visa. Well, they couldn't apply until after November 27, 2009. Right? And on your theory, on November 28, 2009, the government could show up and remove them under A7. Yes. Even if they were lawfully present under the CNMI. If they were lawfully present under the CNMI, they could be removed under 1182A6. The next day, before they got a chance to apply for anything. They could not be – I'm sorry. They could not be removed under 1182A6. They could be removed under any other provision of the Immigration and Nationality Act. So they could be removed. Yes. Because the way you're reading 1182A6 and 1182A7, they're completely coincident. They cover the same people. They may cover the same people, but it's different. The intent of Congress was to protect people from being removed for not being admitted to the United States because everybody in the Marianas on November 28, 2009 became present without admission. And everybody also became present without having, on your theory, as somebody who had an application for admission without proper documents. Everybody. All the same people. That's not actually correct because many of those people may have had green cards, might have had lawful permanent resident cards to the United States. I know, but everybody who was – They might have had visas. I understand. But all the people we're talking about. That did not have a U.S. visa already. They were in the process of obtaining it. So, yeah. If you and my citizens were already citizens of the United States. Right. They became citizens by birth in 1979. Okay. So they were all. All right. Thank you, Counsel. Thank you. You're well over your time. Yes, you may have a minute. On midnight November 28, 2009, under the government's theory, the ICE could have come in and deported all 20,000 aliens under 1182A7. That is not the intent of Congress. The court has recognized correctly that. Even those with valid entry documents? Yes. Under A7. That's what they're saying. Under A7, they can do an end run under the protection of 48 U.S.C. and basically make superfluous that language and also 1182A6. Well, I thought counsel for the government said that if they had valid documents that were issued by the United States at that point, they could not be removed. No, I don't think I heard that correctly. I don't think that would be contradictory. That, of course, is true, but none of them did. I'm sorry, Your Honor. Could you repeat? It is, of course, true that if they had valid entry documents, but they didn't because they weren't in the United States until November 28, 2009. That's right. That's right. So the takeover happens, and all of a sudden now all these folks don't have, they weren't admitted or paroled by a U.S. immigration officer. So under A7, the government's saying ICE could have deported all of them right away before they had a chance to get a visa, which is what A7 says you have to have. But Congress anticipated this. And under 48 U.S.C., 1806, it said if you were already here at the time of the takeover, you get two years if you have an umbrella permit to go find another status. Your Honors, this panel does not need to overrule Minto in order to reverse the BIA's decision. Minto talks about A7. That can be applicable to anybody. It doesn't confront what we have here, which is an alien from the CNMI who is protected under 48 U.S.C. This is going to be a first. The other panel doesn't have to be overruled, Your Honor. We can't overrule the other panel. And I wouldn't want this panel to do so. In fact, I would say that everything after page 625 of that decision is dicta, respectfully. The most of this decision is under an analysis of an applicant for admission being deemed a continuing application. And so if we stop that decision, which by itself can be enough to remove Minto, because he's not protected under 48 U.S.C., everything after that, where they make comments about the interplay between Congress's intent, is dicta, respectfully. Because that's not what you're confronting. So if we disagree with you regarding whether or not that language is dicta, do you lose? If this panel says that that's dicta, this panel is not bound by that. I don't agree with that. A converse. A converse. If we disagree with you regarding that language being dicta, do you lose? Well, in order for that to happen, Your Honor, I don't think the court could come to that conclusion. But if we did come to that conclusion. If the court found. Let me preamble this. If the court found that the alien in this case is the same, factually. That's not my question. Then my answer would be yes. But because they're not. Because they're not, the court would not have to go there. Let me ask you one final question. With regard to the question of whether there was in fact a concession of non-removability, of removability, was that. You say that that concession was made in February after the. Could you just read it to me? First of all, when was it? Yes, Your Honor. Thank you so much. Okay. So it's. In fact, it looks like it was a master hearing held August 15, 2011. There was an. So then that wasn't. What page of the record are you on? Okay. I'm quoting from my briefs. Look at the reference. It says in AR-42. If I may, Your Honor, if I can just. AR-42 is the notice of appearance. That's correct. Okay. I apologize. Let me. Do you want to just. The arguments over anyway and just write a note and submit it to us. Yes, Your Honor. With a copy to opposing counsel. Absolutely, Your Honor. And if I may just. Briefly, you said that this occurred after after the time period had run, but it didn't. According to you now. Because the date you're giving me. I think. The date you're giving me is before the time period had run. The what I'm talking about is there. But what I understood their argument to be was that prior counsel had conceded that his client that our client was removable. Right. And I had shown in the excerpt that he actually only was answering the judge's question whether on that day. But on that day, the day that you're now pointing to, it was it was before the two years had run. Let me check that. Because there's a typo on the AR-42 reference. I'm thinking there's a typo on the date. I can certainly follow up. Okay, please follow up. And one other thing, if I can point the court's attention to AR-114, there is a discussion that prior counsel makes to the immigration judge talking about how these conditional permits were in effect actual permits because the attorney general's office abandoned trying to enforce the conditions that were attached to these permits. And also explains to the immigration judge that prior to the takeover, the AG was within his power to issue these permits. But after the takeover, didn't have any power to change that status. So both arguments were made unopposed, no arguments. Court made no findings to say otherwise. And so respectfully, Your Honor, this also that these conditional permits are actual umbrella permits, Your Honor, and that he had status. All right. Thank you very much, counsel. Huang v. Sessions will be submitted, and we will take up Gu v. Sessions.
judges: Wardlaw, Berzon, Rawlinson